# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Kingston 32GB SIM card<br>Seized as FP&F No. 2022565200008103 Item 0002 | Case No. '22 MJ03784 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-4, incorporated by reference herein.

located in the **Southern** District of **California**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. sec. 1324 | Alien smuggling |

The application is based on these facts:
See attached Affidavit of Border Patrol Agent Adnane Benchekroun, incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Adnane Benchekroun*
Applicant's signature

Adnane Benchekroun, Border Patrol Agent - Intelligence
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by **telephone** *(specify reliable electronic means)*.

Date: 10/17/2022

Judge's signature

City and state: San Diego, California          Hon. Karen S. Crawford, United States Magistrate Judge
Printed name and title

# ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

> Kingston 32GB SIM card
> Seized as FP&F No. 2022565200008103 Item 0002
> ("**Target Device 4**")

The **Target Device** is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1, A-2, A-3, A-4, and A-5 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **July 21, 2022, up to and including August 21, 2022**:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States; and transport aliens inside the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 8, United States Code, Section 1324.

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANTS**

I, Adnane Benchekroun, Border Patrol Agent – Intelligence, being duly sworn, hereby state as follows:

**INTRODUCTION**

1. I submit this affidavit in support of an application for warrants to search the following electronic devices:

>Black Apple iPhone 11
>Seized as FP&F No. 2022565200008101 Item 0004
>("**Target Device 1**")
>
>Black Galaxy Samsung Note 20 Phone
>Seized as FP&F No. 2022565200008102 Item 0001
>("**Target Device 2**")
>
>Black Samsung Note Galaxy J8 Phone
>Seized as FP&F No. 2022565200008103 Item 0001
>("**Target Device 3**")
>
>Kingston 32GB SIM card
>Seized as FP&F No. 2022565200008103 Item 0002
>("**Target Device 4**")
>
>Telcel SIM card
>Seized as FP&F No. 2022565200008103 Item 0002
>("**Target Device 5**")

(collectively, the "**Target Devices**"), as further described in Attachments A-1 through A-5, and to seize evidence of crimes, specifically, violations of Title 8, United States Code, Section 1324 (alien smuggling), as further described in Attachment B.

2. The requested warrants relate to the investigation of an identified alien-smuggling organization and prosecution of individuals associated with it, including Esperanza AHUMADA-Sanchez and Jose Alfredo PINTOR-Leal for transportation of illegal aliens within the United States and aiding and abetting, and conspiracy to transport aliens. AHUMADA and PINTOR were arrested on September 6, 2022 and are defendants in a pending criminal case in the Southern District of California. The **Target Devices** were

1

seized during an August 21, 2022 alien-smuggling event involving the subject organization. Warrants for these devices are being sought now because agents recently determined the relevance of this event to the investigation of the overall organization, AHUMADA, PINTOR, and the September 6, 2022 event; and a prosecution arising from the execution of search warrants on the residence involved in both the August 21 and September 6, 2022 events. For the reasons set forth herein, I believe there is probable cause to believe that the **Target Devices** contain evidence of alien-smuggling, and I believe these devices relate to and contain evidence relevant to at least AHUMADA and PINTOR's offenses. The **Target Devices** currently are in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my experience in and knowledge of the investigation of the subject smuggling organization, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is made solely for the purpose of establishing probable cause for the requested warrants and does not purport to set forth all of my or other agents' knowledge of the investigation. Unless stated otherwise, all dates and times are approximate.

**TRAINING AND EXPERIENCE**

4. I have been employed by the USBP since 2012 and am currently assigned to the San Diego Sector Intelligence Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for ten years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the

arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9.  Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. I and other Border Patrol Agents have investigated an alien-smuggling organization of which AHUMADA, PINTOR, and a number of other individuals are a part. Agents have interdicted several smuggling events relating to this organization since approximately April 2022, and a total of five subjects relating to the investigation are defendants in pending cases in the Southern District of California: AHUMADA and PINTOR, as co-defendants in one case; and in another case, Pedro Garcia-Altamirano a/k/a Esteban Rodriguez-Chavez, Gerardo Gaytan-Valdovinos, and Antonio Guzman-Villela.

12. The investigation thus far has involved several search and tracking warrants. For instance, on June 28, 2022, the Honorable Allison H. Goddard approved a tracking

5

warrant for a white 2016 Kia Optima, and on July 28, 2022, the Honorable Barbara L. Major approved a further tracking warrant for the Kia (same VIN but reflecting the fact that its license plates had changed shortly after the initial warrant was approved). This vehicle is registered to PINTOR. Pursuant to the tracking warrant, agents monitored the Kia between July 29, 2022, and the event on September 6, 2022 discussed below, during which the vehicle was seized. In addition, on September 11, 2022, the Honorable Allison H. Goddard approved search warrants for two residences associated with the organization, which had been used as "stash houses" and involved in multiple smuggling events. On September 20, 2022—during the search of one of these residences, in Bonita (the "Bonita house") pursuant to the warrant for it—the Honorable Mitchell D. Dembin approved a further warrant for the Bonita house, for the seizure of firearms- and narcotics-related evidence. During the initial search of that property, agents discovered several firearms and related items (later identified as three handguns, an unserialized AR-15-style rifle, an unserialized revolver, and over 1300 rounds of ammunition, among other things), and a substance later identified as cocaine, and agents seized these items pursuant to the warrant authorized by Judge Dembin. Pedro Garcia-Altamirano a/k/a Esteban Rodriguez-Chavez, Gerardo Gaytan-Valdovinos, and Antonio Guzman-Villela are defendants in the case arising from the execution of the search warrants on the Bonita house.

13.     The **Target Devices** are in Border Patrol's custody and are the subjects of the requested warrants because of an August 21, 2022 smuggling event. On that day, agents observed, through location data, the tracked Kia drive to a neighborhood located near the intersection of Otay Lakes Road and Lake Crest Drive in Chula Vista, California. The car drove around the neighborhood for approximately four minutes before departing the area. Based on information gather from earlier smuggling events, including from interviews of alien-smuggling drivers and smuggled aliens, and evidence collected from earlier cell-phone downloads relating to alien-smuggling events, agents have determined and I believe that this alien smuggling organization uses that area of Otay Lakes Road to pick up aliens who have entered the United States illegally. On August 21, after being in that area for just

6

a few minutes, the Kia then returned to the Bonita house and remained there for approximately four minutes. The Kia then traveled to a different residence (which agents have observed this organization using during this investigation) before traveling northbound on Interstate 15 (I-15), toward Temecula, California.

14. Based on these activities, SIT-NE agents began observing vehicles on I-15 northbound near Temecula and saw a silver Volkswagen Passat. Agents had observed this particular car before, through in-person surveillance and on camera at a stash house and being driven by individuals believed to be associated with this smuggling organization. Agents followed the Passat until it reached the parking lot of the El Super Market grocery store located at 1301 East Gage Avenue, Los Angeles, California. Agents surveilled the vehicle until they observed what appeared to be a "buyout" taking place. A buyout is a term commonly used by agents when the sponsors or family members of the smuggled illegal aliens meet with the drivers or other members of the smuggling organization in order to pay the agreed smuggling fee for the smuggle alien to be released. Agents including me approached the driver of the Passat and its occupants: the driver was identified as Moises Andres BURGARA-Maldonado, and there were three occupants determined to be individuals without legal status in the United States and identified as aliens being smuggled on this occasion. Agents conducted immigration inspections on these three individuals, all of whom lacked legal status in the United States, and who were identified as Araceli ARELLANO-Escutia (front-seat passenger), Jesus PINA-Perez, and Pedro SILVESTRE-Resendis (both passengers in the back seat).

15. During the observed buyout, one other individual approached the Passat, and I and other agents believe he was engaged in the buyout and smuggling activity. I questioned that individual, who was determined to be Roberto NAPOLES-Mares, a United States citizen. NAPOLES said he had met BURGARA on this occasion to pay him $9,200 as a smuggling payment for one of the aliens, who was intended to be transported to New York. NAPOLES said he did not know who this smuggled alien was.

7

16. At the time agents encountered the five total individuals on August 22, 2022, as discussed above: BURGARA had **Target Device 1** in his hand; NAPOLES had **Target Devices 2** in his hand; and PINA was in possession of **Target Devices 3, 4, and 5**.

17. Agents seized $9,200 in U.S. currency that was on the driver's seat floorboard of the Passat, as alien smuggling proceeds. An additional $1,793 in U.S. currency was seized from BURGARA. Agents arrested BURGARA, NAPOLES, and the three smuggled aliens and transported them back to the Murietta Border Patrol Station for processing.

18. At the Murrieta Station, SIT-NE agents interviewed BURGARA as to his involvement in the alien smuggling event. During a post-*Miranda* interview, BURGARA claimed ownership of **Target Device 1** and stated he used it to communicate with the alien-smuggling organization. BURGARA also admitted to being paid $400 per successfully smuggled illegal alien, and he said the $1,793 was proceeds from prior smuggling events.

19. NAPOLES, too, waived his *Miranda* rights and spoke to agents. He claimed ownership of **Target Device 2** and stated he used it to communicate with the alien-smuggling organization. NAPOLES stated he was to be paid approximately $500 for his role in the smuggling transaction and to transport the illegal aliens further into the United States.

20. During inventory search PINA's wallet, agents located two SIM cards, **Target Devices 4 and 5**. In addition, during an interview with agents, PINA claimed ownership of **Target Device 3**. PINA stated he was paying $10,000 USD as a smuggling fee.

21. This August 21, 2022 event was processed administratively, and neither BURGARA nor NAPOLES was prosecuted at that time.

22. All five devices were placed in evidence bags and sealed. The devices were then transported to the Asset Forfeiture Office in San Diego, California.

23. Based on the facts set forth above, my knowledge of the investigation, and my training and experience, I believe the **Target Devices** contain evidence of alien-smuggling offenses, including communications or other information relating to co-conspirators.

24. In addition, the **Target Devices** relate to AHUMADA and PINTOR for at least to reasons. First, video footage obtained by agents showed a black Acura TL (the "Acura") also arriving at the Bonita house on August 21, 2022, before the Passat was observed and apprehended in Los Angeles. Based on the activities associated with that residence, I believe the Acura was involved in smuggling activities then and likely on other occasions, including September 6, 2022, discussed below.

25. Second, the Bonita house was used in connection with the September 6, 2022 event during which AHUMADA and PINTOR were arrested. In summary, that event arose because agents tracked PINTOR's Kia to a different residence and stash house, and they observed through surveillance the Acura arrive at and depart from the Bonita house in close temporal proximity to PINTOR's departure from the other stash house. Agents continued monitoring and then followed the two cars as they drove north on I-15 to Temecula within 15 minutes of each other, and as stopped at gas stations in Temecula within 10 minutes and one mile of each other. While stopped in Temecula, agents approached the Acura and identified AHUMADA as the driver, and determined that the three passengers were illegal, smuggled aliens. PINTOR was arrested shortly thereafter, on I-15, as he was stopped in the Kia on the side of the highway. Based on the coordination involved in this event, along with my and other agents' knowledge of the subject organization and the particular route AHUMADA took—to circumvent the Border Patrol checkpoint on I-15—I believe PINTOR was acting as at least a scout during this September 6 event. That is, I believe PINTOR was aiding in the transportation of illegal aliens, and was a co-conspirator in alien smuggling, because I believe he was, at the least, assisting in the coordination of this event, trying to help AHUMADA avoid detection by law enforcement, and, in particular, to help her and the smuggled aliens circumvent the Border Patrol checkpoint on I-15. All subjects from that event were arrested, and AHUMADA and PINTOR have been prosecuted for transportation of aliens and conspiracy to transport aliens. Their case remains pending.

26. Accordingly, there is probable cause to believe the **Target Devices** contain evidence of alien-smuggling offenses, and I request warrants to search them as set forth in Attachments A-1 through A-5, and to seize items as set forth in Attachment B.

27. Based on my training and experience, it is common for principals and smuggled aliens to arrange transportation and other smuggling arrangements weeks or months before the event. Further, based on my experience and knowledge of the investigation and this smuggling organization, I know the organization's members use cellular devices to communicate and arrange smuggling events. Accordingly, I believe the **Target Devices** were used in connection with alien smuggling for at least weeks in advance of August 21, 2022, and so I request warrants to search them and seize evidence of alien smuggling, as set forth in Attachment B, for the time period of **July 21, 2022 up to and including August 21, 2022**.

## METHODOLOGY

28. It is not possible to determine, merely by knowing the cellular telephones' make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all

of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the devices manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

29. Following the issuance of these warrants, an agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephones and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

30. Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days from the date this warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

31. Law enforcement has not otherwise attempted to obtain the evidence sought by this warrant.

//
//
//
//
//
//
//
//
//
//

## CONCLUSION

32. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence violations of Title 8, United States Code, Sections 1324. I request that the Court issue a warrant authorizing law enforcement to search the **Target Devices** as described in Attachment A-1 through A-5, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge, information, and belief.

*Adnane Benchekroun*
Adnane Benchekroun
Border Patrol Agent – Intelligence

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 17th day of October 2022.

_____
Honorable Karen S. Crawford
United States Magistrate Judge